IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

LabMD, INC.,                                )
                                            )
     Appellant,                     )
                                            )
v.                                          )    Case No. 14-12144-EE
                                            )
FEDERAL TRADE COMMISSION,                   )
                                            )
     Appellee.                      )
_____        )

**APPELLANT'S CERTIFICATE OF INTERESTED**
**PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1-1, I, the undersigned counsel of record for Appellant, LabMD, Inc.

("LabMD"), certify that LabMD is not publicly held, has no parent corporation,

subsidiary, conglomerate or affiliate, and no publicly-held corporation owns 10%

or more of its stock.  I further certify that to the best of my knowledge the

following is a complete list of the trial judge(s), attorneys, persons, associations of

persons, firms, partnerships, or corporations that have an interest in the outcome of

the particular case or appeal:

Cause of Action Institute

Chappell, Hon. D. Michael

Cox, Megan

Brown, Jarad

C-1

Daly, John

Daugherty, Michael J.

Dinsmore & Shohl, LLP

Duffey, Jr., Hon. William S.

Epstein, Daniel

Fascett, Lauren E.

Federal Trade Commission, General Counsel's Office

Gorji, Perham

Harris, Lorinda

Holder, United States Attorney General Eric

Kilpatrick Townsend & Stockton LLP

Krebs, John

Lassack, Margaret

Mehm, Ryan

Meyer, William D.

Morgan, Hallee

Pepson, Michael D.

Raider, Ronald L.

Ramirez, Commissioner Edith

Rubenstein, Reed D.

Sheer, Alain

Sherman, William

Sieradzki, David

Singleton, Burleigh L.

VanDruff, Laura Riposo

Respectfully submitted, this 15th day of May, 2014.

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
rraider@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

/s/ Ronald L. Raider
Ronald L. Raider
Georgia Bar No. 592192
Burleigh L. Singleton
Georgia Bar No. 649084
William D. Meyer
Georgia Bar No. 950008
*Counsel for Appellant LabMD, Inc.*

Michael D. Pepson
Cause of Action
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile:  (202) 330-5842
michael.pepson@causeofaction.org

/s/ Michael D. Pepson
Michael D. Pepson
Admitted only in Maryland.
Practice limited to cases in federal court
and administrative proceedings before
federal agencies.
*Counsel for Appellant LabMD, Inc.*

Reed D. Rubinstein
D.C. Bar No. 400153
Dinsmore & Shohl, L.L.P.
801 Pennsylvania Ave., NW, Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9120
Facsimile:  (202) 372-9141
reed.rubinstein@dinsmore.com

/s/ Reed D. Rubinstein
Reed D. Rubinstein

Senior Vice President for Litigation and
Counsel to Cause of Action
*Counsel for Appellant LabMD, Inc.*

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

LabMD, INC.,                          )
                                     )
     Appellant,                     )
                                     )
v.                                   )    Case No. 14-12144-EE
                                     )    **EMERGENCY MOTION**
FEDERAL TRADE COMMISSION,             )
                                     )
     Appellee.                      )

### APPELLANT'S MOTION FOR STAY PENDING REVIEW AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE

Pursuant to Fed. R. App. P. 8, Appellant, LabMD, Inc. ("LabMD"), respectfully seeks an order from this Court (1) enjoining ongoing administrative enforcement proceedings filed by Appellee, the Federal Trade Commission (the "FTC") and (2) requiring an expedited briefing schedule requiring briefing much earlier than the current schedule which calls for LabMD's initial brief to be filed by June 24, 2014.  Good cause for this relief is set forth below.

## I.  NATURE OF ACTION AND RELATED REQUEST FOR RELIEF IN THE DISTRICT COURT

This action arises from the FTC's decision to use its general authority under the FTC Act to over-regulate LabMD and other health care providers in the field of data security by first investigating and then prosecuting alleged breaches of sensitive patient information in LabMD's possession.  The FTC is over-regulating

1

in this area because explicit authority to regulate data security obligations of health care providers such as LabMD has been delegated to the United States Department of Health and Human Services ("HHS"), who has exercised that authority and adopted data security regulations for health care providers.

In its verified complaint filed in the action below, LabMD sought judicial review and relief because the FTC lacked jurisdiction to act, violated due process by failing to provide LabMD with fair notice of its data security obligations and by employing rules of administrative practice that the American Bar Association Section of Antitrust Law warned "compromise respondents' rights and ability to mount an effective defense," and wrongfully filed the administrative complaint in retaliation for protected First Amendment speech. LabMD pled finality on the grounds that the FTC had denied LabMD's jurisdictional motion to dismiss and then claimed *Chevron* deference for this ruling, and that empirical evidence published by Commissioner Wright demonstrated that the Commission's decision to issue a complaint against LabMD meant that LabMD's fate was sealed.[1]

---

[1] Commissioner Wright collected data showing that over the past twenty years, in 100% of the cases in which an administrative law judge (the "ALJ") found for the FTC in a Section 5 proceeding (the type of proceeding commenced against LabMD), the Commission upheld the ALJ. And, in 100% of the cases in which the ALJ found for the respondent, the Commission reversed the ALJ. In other words, the FTC never loses a Section 5 case on its home court. Joshua D. Wright, Comm'r, Fed. Trade Comm'n, *Recalibrating Section 5: A Response to the CPI Symposium*, CPI Antitrust Symposium, at 4 (November 2013), *available at*

In addressing LabMD's First Amendment retaliation claim, the trial court was disturbed by the FTC's practice of monitoring blogs containing critical speech, its "parachuting in" to the highly regulated health care field, and its failure to "tell…[health care companies] what the FTC rules are because they have never told anybody."[2]  The trial court said that the manner in which the FTC conducted its investigation was "a sad comment on [the] agency…"[3]  And, the trial court added that the FTC's actions harmed the "consuming public" by taking LabMD "out of the market" and reducing competition.[4]  However, the trial court dismissed the entire complaint under Fed. R. Civ. P. 12(b) for lack of subject matter jurisdiction, finding that the FTC had not yet taken final agency action without (1) addressing the controlling authorities cited by LabMD, (2) acknowledging that the FTC had claimed *Chevron* deference for its jurisdictional ruling (*i.e.* ad admission of final agency action by the FTC), or (3) addressing evidence developed by the FTC showing that the Commission's decision to file a complaint was tantamount to a final decision on the merits.  Instead of relying on LabMD's fact allegations, the trial court cited evidence elicited during a May 7 evidentiary hearing on the preliminary injunction motion.  The trial court also dismissed LabMd's motion for

---

http://www.ftc.gov/sites/default/files/documents/public_statements/recalibrating-section-5-response-cpi-symposium/1311section5.pdf (last visited May 15, 2014).

[2]  Hearing Tr. (attached hereto as Exhibit A) at 95:4-11.

[3]  Hearing Tr. at 77:9-15.

[4]  Hearing Tr. at 88:22-89:03.

preliminary injunction as moot.  True and correct copies of the trial court's Order and Judgment are attached hereto as Exhibits B and C respectively.

The administrative hearing is scheduled to begin Tuesday, May 20, 2014. The hearing could last up to thirty hearing days.  A final decision from the FTC may take an additional six months or more.  LabMD's brief in this Court is not due until June 24, 2014.  A stay and expedited briefing is needed to prevent further harm due to these extended proceedings and due to the FTC's ongoing violation of LabMD's constitutional rights.

## II.    INTRODUCTION

LabMD has provided cancer-detection testing services to physicians throughout the United States.[5]  Through these services, LabMD acquires personal information about the patients of its physician clients.  The FTC alleges that on at least two separate occasions, sensitive patient information was released into the public because LabMD had failed to implement adequate data security practices. LabMD denies these allegations.  But, even if true, one incident is alleged to have occurred in 2008 because of unauthorized software a LabMD downloaded onto a company computer.  That software was promptly disabled in 2008.[6]  The second

---

[5]  *See* Compl. (attached hereto as Exhibit D) ¶ 7.
[6]  Compl. Ex. 4 ¶ 17.

incident involved paper records found in Sacramento, California which the FTC

has yet to link to some conduct by or fault of LabMD.[7]

Even though there were no ongoing concerns, the FTC continued to pursue

an investigation citing its "unfair practices" authority under the FTC Act.[8]  This

investigation has continued for more than three and one-half years and has

culminated in an administrative complaint filed in August, 2013.  The prolonged

proceedings are an abuse of process, violate LabMD's due process rights and

have caused it to lose its insurance and to stop offering cancer-detection services.[9]

The primary issue raised in LabMD"s lawsuit is the over-regulation by the

FTC.  LabMD is expressly subject to data security and other regulation HHS

under the federal Health Insurance Portability and Accountability Act ("HIPAA")

and the Health Information Technology for Economic and Clinical Health Act

("HITECH").[10]  No federal law expressly authorizes the FTC to regulate HIPAA-

covered entities.  Instead, the FTC asserts such authority under the general

"unfairness" authority of Section 5 of the FTC Act.[11]

Neither HHS nor the FTC has claimed that LabMD violated HIPAA or

HITECH.  Nevertheless, the FTC claims statutory authority to over-regulate

---

[7]  Hearing Tr. at 72:9-12, 72:16-74:18, 79:18-80:05.
[8]  15 U.S.C. § 45.
[9]  Compl. ¶¶ 7-20.
[10]  Compl. ¶ 16.
[11]  15 U.S.C. § 45(b).

LabMD by imposing "common law" data security requirements on a case-by-case basis that add to or even contradict the data security requirements set by HHS using notice and comment rulemaking. The FTC claims it can do this and, even if its actions are *ultra vires* and transgress statutory and constitutional boundaries, no Article III court may step in to stop the abuse until the FTC says so.

Hearings before an ALJ begin this Tuesday, May 20, 2014 and may last two to three months. The ALJ's decision is not expected for another three to five months from the close of these proceedings. An appeal to the Commission is a statistical certainty and this will extend the process for many months more.

Unless the FTC is enjoined, LabMD must go through the motions of a futile and pre-determined administrative process and suffer as a result significant deprivations of its constitutional rights. This cannot be the law, especially where, as here, the FTC has taken final agency action in the form of a jurisdictional determination for which it claims *Chevron* deference. And, in fact, controlling authorities hold that the FTC may not dodge judicial review under these circumstances. Instead, the merits of whether the FTC may invoke its "unfair practices" authority to over-regulate a HIPAA-covered entity in the field of data security should be determined by an Article III court now. Expedited briefing is requested to address the legal issue on the FTC's authority as promptly as

possible so this matter can be brought to a close and LabMD has an opportunity

to resume its cancer-detection testing business.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    <u>Emergency Relief From This Court Is Needed.</u>

LabMD seeks an emergency order staying the pending FTC enforcement

action and requests an expedited briefing schedule so that the underlying legal

issues are resolved promptly.  The hearing is scheduled to begin on Tuesday, May

20, 2014, and action by the FTC is months away.  Because of the timing, as well as

the fact that seeking relief in the district court would be futile, immediate relief

from this Court is needed.  *See* Fed. R. App. P. 8(a)(2)(A)(i) (stating that while a

motion for stay must ordinarily be filed first with the district court, such a motion

may be made to the court of appeals or one of its judges upon showing that

"moving first in the district court would be impracticable"); *Ruiz v. Estelle*, 650

F.2d 555, 567 (5th Cir. 1981) ("Under our construction of Rule 8(a), we believe

the district court should have the opportunity to rule on the reasons and evidence

presented in support of a stay, unless it clearly appears that further arguments in

support of the stay would be pointless in the district court.").[12]  Delay in

determining the merits of LabMD's appeal will deny it effective relief.

---

[12]  S*ee also Populist Party v. Herschler*, 746 F.2d 656, 657 n.1 (10th Cir. 1984)
("An application for [a stay] must ordinarily be made in the first instance in the
district court.  The 1984 election, however, is almost upon us, and the order of the

As explained below, the outcome before the FTC is a foregone conclusion. The FTC Commissioners routinely uphold FTC staff recommendations for enforcement even when the FTC administrative law judge makes contrary findings of fact and conclusions of law.  *See, e.g.*, *Schering-Plough v. Fed. Trade Comm'n*, 402 F.3d 1056 (11th Cir. 2005).  LabMD already has been forced to stop offering cancer-detection laboratory services without any offsetting benefit to the public, particularly cancer patients who need such medical services.  Requiring LabMD to wait for the FTC Commission to issue a "cease and desist" order will cause further harm and increase the likelihood that LabMD has shuttered its test laboratory for good.[13]

Moreover, seeking a stay from the trial court would be futile at this point for at least two reasons.  First, the trial court's order found that he lacked jurisdiction to consider the merits of LabMD's causes of action against the FTC and thus, granted a Fed. R. Civ. P. 12(b) motion dismissing LabMD's complaint and denying as moot LabMD's motion for preliminary injunction – the precise relief

---

district court shows that seeking such relief there would not be practicable.  We believe that the need for relief is so immediate that application in the district court is not necessary in these circumstances." (internal quotation and citation omitted)); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) ("Although it is the court's strong preference that a stay be sought first in the district court, the rule admits of exceptions, and under the circumstances, it would serve little purpose to require another application to the district court.  Moreover, the district court's resolve is demonstrated by a briefing schedule and imminent hearing on civil contempt.").

[13]  S*ee* Compl. ¶¶ 96-102.

LabMD is seeking from this Court. The trial court is not likely to change his opinion as to his legal authority.

Second, the trial court granted the FTC's motion to dismiss while heavily criticizing the FTC's conduct towards LabMD. On May 7, 2014, the trial court held an evidentiary hearing on LabMD's motion for preliminary injunction and questioned the FTC's conduct and investigation. First, the trial court questioned the evidence supporting the Sacramento document allegations:

> **The Court**: All right. But are you still proceeding on that claim?
>
> **Mr. Schoshinski**: we are proceeding on that evidence, your honor.
>
> **The Court**: And that evidence relates to other claims, because you have other documents that were found in other places?
>
> **Mr. Schoshinski**: That evidence relates to the potential injury suffered by consumers as a result of exposure of this information.
>
> **The Court**: Are you serious about that last response?
>
> **Mr. Schoshinski**: Yes, your honor, I am.
>
> **The Court**: So you don't know where the documents came from, you don't know how these people got the possession of it, you don't know whether they originated from LabMD or some other place, but you are going to use that to show that, because they committed identity theft, that certain individuals were damaged by documents, the source of which you don't even know?
>
> **Mr. Schoshinski**: Yes, your honor.
>
> **The Court**: Holy cow.[14]

---

[14]  Hearing Tr. at 80:11-81:07.

The trial court also voiced his concerns over why FTC employees visited the personal website of LabMD's CEO Michael Daugherty 75 times on the day after Mr. Daugherty posted criticism of the FTC's investigation of LabMD, stating:

> **The Court**: Are you telling me as an officer of the court that after a critical blog post, that somebody at the FTC, in order to make sure that he was -- that he was not impeded in his first amendment rights, decided the next day to 75 times make sure that the same post was up there and, therefore, it could come in and make an argument like you have just made, that the purpose of that access was to make sure that he was unimpeded in the exercise of his first amendment rights?[15]

The excessive visits to Mr. Daugherty's blog by FTC employees the day after he criticized the FTC on his blog has a chilling effect on Mr. Daugherty's exercise of free speech. This chilling effect corroborates the allegations supporting the retaliation claim asserted against the FTC in the LabMD complaint.

The trial court also observed that the dispute turned on legal issues but questioned whether he had jurisdiction to address those issues:

> **The Court**: -- Is that the FTC is going to go into the business of monitoring and investigating and regulating security breaches and that they have decided Ii think to do that within what they believe is their administrative authority, because I think they went to Congress and Congress wouldn't authorize that for whatever reason, whether it's politics or not. But I think there has been no amendment to Section 5 to specifically allow that. But they are taking the position that they have the authority to do that.

> \*          \*          \*          \*          \*

---

[15]  Hearing Tr. at 25:03-11.

I think that there is a significant question about whether section 5 allows that, but I'm not sure I can decide that based upon my jurisdictional limitations, perhaps.[16]

This legal issue is now ripe for resolution by this Court for the reasons discussed in Part B, below.  Further development of what LabMD did or did not do relative to data security will not impact whether the FTC may assert authority over LabMD's conduct in light of Congress's express delegation of authority to HHS through HIPAA and HITECH.

**B.**    **LabMD's Appeal Raises Significant Legal Issues That Warrant Prompt Attention From this Court.**

The appeal by LabMD raises three significant legal issues that are ready for determination by this Court.  These legal issues may not be addressed adequately if this Court waits until issuance of a "cease and desist" order by the FTC, particularly given LabMD's grim business outlook caused by the FTC enforcement action.[17]  An overview of the legal issues is provided below.

**1.**    **LabMD Stated A Claim That the FTC Has Retaliated Against the Exercise of Free Speech by LabMD CEO Daugherty**

The United States Supreme Court has acknowledged that the government may suppress protected speech without actually prosecuting citizens or taking action against them.  *See, e.g.*, *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656,

---

[16]  Hearing Tr. at 86:11-25.
[17]  S*ee* Compl. ¶¶ 96-102.

670-71 (2004); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

Moreover, the Supreme Court allows plaintiffs to challenge agency conduct and

laws on First Amendment grounds before any actual enforcement to prevent the

government from compelling citizens to self-censor speech.  *See Holder v.*

*Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *Am. Booksellers Ass'n,*

*Inc.*, 484 U.S. at 393; *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289,

301-03 (1979).  The Supreme Court is addressing this issue again in the context of

a state administrative law regime where the State of Ohio has argued, as the FTC

has argued here, that actual enforcement is too speculative unless and until the

administrative agency undertakes formal action against citizens.  *See Susan B.*

*Anthony List v. Driehaus*, 525 F. App'x 415, *cert. granted*, 134 S. Ct. 895 (2014).

Nevertheless, the trial court erroneously dismissed LabMD's retaliation claim

concluding that the pendency of an administrative enforcement proceeding against

LabMD is grounds for dismissing a First Amendment driven claim of retaliation.

The dismissed well-pled retaliation claim has alleged that the FTC

enforcement action is in retaliation for Mr. Daugherty criticizing the FTC on his

blog and his publishing a book critical of the FTC.  LabMD supplemented the

allegations with evidence presented during the May 7 hearing.  For example, as

noted above, there is evidence that FTC employees visited Mr. Daugherty's blog

75 times on the day after he criticized the FTC.  The FTC may not engage in

conduct that chills the exercise of free speech.  Mr. Daugherty noted that his blog did not contain any information pertinent to the data security claims at issue in the FTC administrative proceeding.[18]  So many visits on the day after a critical blog entry sent the message that we are monitoring you and will act accordingly.  Those acts support a claim of retaliation and the district court may adjudicate that claim regardless of the status of the FTC's enforcement action.  *Smith v. Mosely*, 532 F.3d 1270, 1276 (11th Cir. 2008) (setting forth the elements of a retaliation claim.)

## 2.    The FTC Issued a Final Agency Action on Its Authority.

The legal issue concerns whether the "unfair practices" prong of Section 5 of the FTC Act grants to the FTC authority to over-regulate HIPAA-covered entities in the field of data security.  LabMD sought district court review of a decision by the FTC Commissioners denying a motion to dismiss by LabMD (the "LabMD Order").  While often such orders are not final agency action, this order was.

The reason the LabMD Order was final agency action is that is how the FTC has construed that agency action.  In argument to the trial court, the FTC stated:

**"The Commission's ruling represents a definitive interpretation of the application of Section 5 to data security. . . ."**[19]  The FTC relied on *Federal Trade Comm'n v. Standard Oil Co. of Calif.*, 449 U.S. 232 (1980) to argue the order was not final agency action.  But, in *Standard Oil*, the Supreme Court used

---

[18]  Hearing Tr. at 30:19-22.
[19]  FTC Br. (attached hereto as Exhibit E) at 24 (emphasis added).

strikingly similar language to describe "final agency" action: "The regulations were 'definitive' statements of the Commission's position, and had a 'direct and immediate . . . effect on the day-to-day business' of the complaining parties." *Standard Oil*, 449 U.S. at 239 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The Order, according to the FTC, is a definitive statement of the Commission's position and would subject LabMD to FTC oversight and thus, have a direct and immediate impact on LabMD's business. The LabMD Order satisfies the *Standard Oil* test for final agency action and as such is ripe for judicial review.

The Order also is final agency action because the FTC has submitted it to at least one district court urging the court to apply so-called *Chevron* deference to the opinion.[20] *Chevron v. Nat'l Res. Def. Council*, 467 U.S. 837 (1984). *Chevron* deference may only attach to final agency actions.[21] The FTC's actions confirm that the Order is final agency action. The FTC elected to issue its final agency action through the LabMD Order and not through a "cease and desist" order. Thus, the district court, rather than this Court, has jurisdiction to review that agency action. *See Fed. Trade Comm'n v. Feldman*, 532 F.2d 1092 (7th Cir.

---

[20]  Compl. Ex. 6.
[21]  *Franklin Fed. Sav. Bank v. Dir. Office of Thrift Supervision*, 927 F.2d 1332, 1337 (6th Cir. 1991) ("When an agency has acted so definitively that its actions are defended based on Chevron, we believe that its action should be treated as final."); *Air Brake Sys. v. Mineta,* 357 F.3d 632, 641-644 (6th Cir. 2004); *see also United States v. Mead Corp*., 533 U.S. 218, 226-27 (2001).

1976); *E.I. du Pont de Nemours & Co. v. Fed. Trade Comm'n*, 488 F. Supp. 747

(D. Del. 1980); *Boise Cascade Co. v. Fed. Trade Comm'n*, 498 F. Supp. 772 (D.

Del. 1980).[22]  The lawfulness of the FTC's authority to over-regulate HIPAA-

covered entities is ripe for judicial review.  The trial court erred by declining to

rule on the merits on grounds that the FTC had yet to issue final agency action.

### 3.  The trial court Considered Evidence Outside the Four Corners of the Complaint.

The trial court cites the proper standard for consideration of a Rule 12(b)

motion.[23]  The well-pled allegations in the complaint are deemed true and for such

a motion to be granted, the plaintiff must have failed to state a claim.[24]

As noted above, the trial court considered evidence developed at the May 7

hearing and also accepted as true facts, the FTC's characterizations of LabMD's

well-pled allegations.  This was legal error.  As an example, the trial court found

---

[22] *See also Standard Oil. v. Fed. Trade Comm'n*, 475 F. Supp. 1261, 1282 (N.D. Ind. 1979); *Beltone Elec. v. Fed. Trade Comm'n*, 402 F. Supp. 590, 602 (N.D. Ill. 1975); *Times Mirror Co. v. Fed. Trade Comm'n*, No. 78-3422-LEW, 1979 WL 1651 (C.D. Cal. June 13, 1979); *Horizon Co. v. Fed. Trade Comm'n*, No. 76-2031, 1976 WL 1343, at * 14 & n.19 (D.D.C. Nov. 18, 1976); *Sperry & Hutchinson Co. v. Fed. Trade Comm'n*, 256 F. Supp. 136, 144 (S.D. N.Y. 1966); *GMC v. Fed. Trade Comm'n*, No. C77-706, 1977 WL 1552, at * 12-14 (N.D. Ohio Nov. 4, 1977); *Pepsico v. FTC*, 343 F. Supp. 396, 399 (S.D.N.Y.), *aff'd*, 472 F.2d 179 (2d Cir. 1972); *Coca-Cola v. Fed. Trade Comm'n*, 342 F. Supp. 670, 676-77 (N.D. Ga. 1972), *aff'd*, 475 F.2d 299 (5th Cir. 1973).

[23] Order at 8-9.

[24] *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 1999); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

that LabMD cited harms typical of any enforcement proceeding such as incurrence of legal costs and reputational harm.[25]  But, LabMD alleged harms that district courts have recognized give rise to irreparable injury.  LabMD alleged that it was unable to renew its insurance after the FTC formally initiated enforcement proceedings in August 2013 and that it had to lay off employees and stop performing cancer-detection tests.[26]  Loss of business is irreparable harm. *Sheikh's, Inc. v. United States*, No. 10-62004-CIV, 2010 WL 5253531, at * 2 (S.D. Fla. Dec. 15, 2010) ("Plaintiff will suffer irreparable harm without a stay of the administrative action"); *see also Odebrecht Constr. Inc. v. Sec'y Fla. Dep't of Transp.*, 715 F.3d 1268, 1288 (11th Cir. 2013).

## IV.   CONCLUSION

LabMD has tried repeatedly to have a court review whether the FTC may use its "unfair practices" authority under the FTC Act to over-regulate HIPAA-covered entities in the field of data security.  Throughout, the FTC has conducted an elaborate campaign to prevent judicial review of that legal issue while trumpeting its authority to over-regulate.  The direct consequence is that LabMD no longer offers cancer-detection services while the FTC's legal position evades judicial review.  LabMD will not be able to obtain insurance and resume operations while the cloud of enforcement proceedings hangs over its head. In

---

[25]  Order at 14-15.
[26]  Compl. ¶¶ 12-15

order to give LabMD a chance to resume offering cancer-detection services,

prompt judicial review is needed.  LabMD asks this Court (1) to rule on the merits

of the FTC's legal position, (2) to enjoin the FTC proceeding until this Court rules

on the merits of the FTC's legal position and (3) require expedited briefing so that

these legal issues are resolved promptly.

Respectfully submitted, this 15th day of May, 2014.

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
rraider@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

/s/ Ronald L. Raider
Ronald L. Raider
Georgia Bar No. 592192
Burleigh L. Singleton
Georgia Bar No. 649084
William D. Meyer
Georgia Bar No. 950008
*Counsel for Appellant LabMD, Inc.*

Michael D. Pepson
Cause of Action
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile:   (202) 330-5842
michael.pepson@causeofaction.org

/s/ Michael D. Pepson
Michael D. Pepson
Admitted only in Maryland.
Practice limited to cases in federal court
and administrative proceedings before
federal agencies.
*Counsel for Appellant LabMD, Inc.*

Reed D. Rubinstein
D.C. Bar No. 400153
Dinsmore & Shohl, L.L.P.
801 Pennsylvania Ave., NW, Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9120
Facsimile:   (202) 372-9141
reed.rubinstein@dinsmore.com

/s/ Reed D. Rubinstein
Reed D. Rubinstein

Senior Vice President for Litigation and
Counsel to Cause of Action
*Counsel for Appellant LabMD, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May, 2014, the foregoing

APPELLANT'S MOTION FOR STAY PENDING REVIEW AND REQUEST

FOR EXPEDITED BRIEFING SCHEDULE was filed in the Eleventh Circuit

Court of Appeals using the CM/ECF system.  I further certify that electronic copies

of the foregoing APPELLANT'S MOTION FOR STAY PENDING REVIEW

AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE were served via the

CM/ECF system, and paper copies were served via U.S. Mail to:

> Lauren E. Fascett, Esq.
> Perham Gorji, Esq.
> Trial Attorneys
> U.S. Department of Justice
> Civil Division
> Consumer Protection Branch
> 450 5th Street NW
> Washington, DC 20001
> lauren.fascett@usdoj.gov
> perham.gorji@usdoj.gov

This 15th day of May, 2014.

> /s/ Ronald L. Raider
> *Counsel for Appellant LabMD, Inc.*

19