No. 14-12144-EE

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

LABMD, INC.,
PLAINTIFF/APPELLANT,

V.

FEDERAL TRADE COMMISSION,
DEFENDANT/APPELLEE.

Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division,
District Court Docket No. 1:14-cv-810-WSD
The Honorable William S. Duffey, Jr.

## APPELLANT'S REPLY BRIEF

Ronald L. Raider
Burleigh L. Singleton
William D. Meyer
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
rraider@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

Prashant K. Khetan
D.C. Bar No. 477636
Michael D. Pepson
Admitted only in Maryland
CAUSE OF ACTION
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile:   (202) 330-5842
prashant.khetan@causeofaction.org
michael.pepson@causeofaction.org

US2008 5873102 2

Reed D. Rubinstein
D.C. Bar No. 400153
DINSMORE & SHOHL, L.L.P.
801 Pennsylvania Ave., NW, Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9120
Facsimile:   (202) 372-9141
reed.rubinstein@dinsmore.com

*Counsel for Plaintiff/Appellant*

Dated:  August 11, 2014

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

LABMD, INC.,                          )
                                      )
        APPELLANT,                    )
                                      )
V.                                    )    CASE NO. 14-12144-EE
                                      )
FEDERAL TRADE COMMISSION,             )
                                      )
        APPELLEE.                     )

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, I, the undersigned counsel of record for Appellant, LabMD, Inc. ("LabMD"), certify that LabMD is not publicly held, has no parent corporation, subsidiary, conglomerate or affiliate, and no publicly-held corporation owns 10% or more of its stock. I further certify that to the best of my knowledge, in addition to the trial judge(s), attorneys, persons, associations of persons, firms, partnerships, and corporations listed in LabMD's Brief and in Appellee's Brief, the following individual has an interest in this case:

Khetan, Prashant K.

US2008 5873102 2

Respectfully submitted, this 11th day of August, 2014.

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
rraider@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

/s/ Ronald L. Raider
Ronald L. Raider
Georgia Bar No. 592192
Burleigh L. Singleton
Georgia Bar No. 649084
William D. Meyer
Georgia Bar No. 950008

*Counsel for Appellant LabMD, Inc.*


CAUSE OF ACTION
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile:   (202) 330-5842
prashant.khetan@causeofaction.org
michael.pepson@causeofaction.org

/s/ Prashant K. Khetan
Prashant K. Khetan
D.C. Bar No. 477636
(renewal admission to be filed)
Michael D. Pepson
Admitted only in Maryland;
practice limited to federal matters

*Counsel for Appellant LabMD, Inc.*


DINSMORE & SHOHL, L.L.P.
801 Pennsylvania Ave., NW, Suite 610
Washington, D.C. 20004
Telephone: (202) 372-9120
Facsimile:   (202) 372-9141
reed.rubinstein@dinsmore.com

/s/ Reed D. Rubinstein
Reed D. Rubinstein
D.C. Bar No. 400153

Senior Vice President for Litigation and
Counsel to Cause of Action

*Counsel for Appellant LabMD, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT AND CITATIONS OF AUTHORITY ..............................................1

I.    LabMD's APA Claims Are Reviewable Now...................................3

II.   Even Without Final Agency Action, LabMD's Other Claims Are
      Reviewable Now.............................................................10

III.  On The Merits, This Court Can Rule For LabMD On Its Jurisdictional
      And Due Process Claims. ..................................................14

      A.    The FTC's Actions Are *Ultra Vires* Because It Lacks
            Jurisdiction Over LabMD's Protected Health Information Data
            Security...........................................................14

      B.    The FTC Violates Due Process. .....................................16

IV.   LabMD States A Claim That The FTC's Retaliation Violates The First
      Amendment..................................................................18

CONCLUSION .................................................................19

CERTIFICATE OF COMPLIANCE...................................................21

CERTIFICATE OF SERVICE .....................................................22

i

# TABLE OF CITATIONS

## Cases

*Air Brake Sys. v. Mineta*,
  357 F.3d 632 (6th Cir. 2004)...................................................................4

*American Airlines, Inc. v. Herman*,
  176 F.3d 283 (5th Cir. 1999)...................................................................9

*American General Insurance Co. v. FTC*,
  496 F.2d 197 (5th Cir. 1974).................................................................11

*Athlone Industries, Inc. v. CPSC*,
  707 F.2d 1485 (D.C. Cir. 1983) ..................................................... 3, 14

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ...............................................................................10

*Bennett v. Spear*,
  520 U.S. 154 (1994) ..................................................................................4

*Boise Cascade Co. v. FTC,*
  498 F. Supp. 772 (D. Del. 1980).............................................................7

*Borden, Inc. v. FTC*,
  495 F.2d 785 (7th Cir. 1974)..................................................................11

*Chevron v. NRDC*,
  467 U.S. 837 (1984) ...............................................................................4, 5

*Coca-Cola Co. v. FTC*,
  475 F.2d 299 (5th Cir. 1973)...................................................................11

*Coca-Cola v. FTC*,
  342 F. Supp. 670 (N.D. Ga. 1972) ..........................................................7

*Connally v. Gen. Constr. Co.*,
  269 U.S. 385 (1926) .................................................................................17

*Credit Suisse v. Billing*,
  551 U.S. 264 (2007) .................................................................................15

*CSI Av. Servs. v. DOT*,
  637 F.3d 408 (D.C. Cir. 2011) ............................................................7, 8

*Devon Energy Corp. v. Kempthorne*,
  551 F.3d 1030 (D.C. Cir. 2008) ...............................................................4

US2008 5873102 2

*Doe v. FAA*,
  432 F.3d 1259 (11th Cir. 2005) ...........................................................8

*E.I. du Pont de Nemours and Company v. FTC*,
  488 F. Supp. 747 (D. Del. 1980)...........................................................7

*Exxon v. FTC*,
  411 F. Supp. 1362 (D. Del. 1976)..........................................................7

*Fla. Mach. & Foundry, Inc. v. OSHRC*,
  693 F.2d 119 (11th Cir. 1982) .............................................................17

*Franklin Fed'l Sav. Bank v. Dir. Office of Thrift Supervision*,
  927 F.2d 1332 (6th Cir. 1991) .............................................................5

*Frito-Lay, Inc. v. FTC*,
  380 F.2d 8 (5th Cir. 1967)....................................................................12

*Fritz v. Ch. Twp. of Comstock*,
  592 F.3d 718 (6th Cir. 2010)...............................................................18

*FTC v. A. P. W. Paper Co.*,
  328 U.S. 193 (1946)..............................................................................15

*FTC v. Standard Oil Co. of California*,
  449 U.S. 232 (1980).................................................................. 7, 8, 10

*FTC v. Wyndham Worldwide Corp.*,
  No. 14-8091 (3d Cir. July 14, 2014)...................................... 5, 12, 13

*Georgia Pac. Corp. v. OSHRC*,
  25 F.3d 999 (11th Cir. 1994)...............................................................17

*GMC v. FTC*,
  No. C77-706, 1977 U.S. Dist. LEXIS 13095 (N.D. Ohio 1978)..........7

*Good v. Altria Group, Inc.*,
  501 F.3d 29 (1st Cir. 2007)..................................................................16

*Great Plains Coop v. CFTC*,
  205 F.3d 353 (8th Cir. 2000)................................................................8

*Green v. Brantley*,
  981 F.2d 514 (11th Cir. 1993) ..............................................................8

*Heckler v. Chaney*,
  470 U.S. 821 (1985).................................................................................1

iii

*Horizon Co. v. FTC*,
  No. 76-2031, 1976 U.S. Dist. LEXIS 12222 (D.D.C. 1976) ................................7

*In re Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ...........................................................................................15

*La. Pub. Serv. Com. v. FCC*,
  476 U.S. 355 (1986) ...........................................................................................15

*Loving v. IRS*,
  742 F.3d 1013 (D.C. Cir. 2014) .........................................................................15

*Mittleman v. Postal Regulatory Comm'n*,
  No. 12-1095, 2014 U.S. App. LEXIS 12803 (D.C. Cir. July 8, 2014)...............11

*N.B. by D.G. v. Alachua County Sch. Bd.*,
  84 F.3d 1376 (11th Cir. 1996) .............................................................................8

*Nat'l Envtl. Dev. Ass'ns Clean Air Project v. EPA*,
  No. 13-1035, 752 F.3d 999 (D.C. Cir. May 30, 2014) .........................................9

*National Parks Conservation Association v. Norton*,
  324 F.3d 1229 (11th Cir. 2003) .........................................................................10

*Pepsico v. FTC*,
  343 F. Supp. 396 (S.D. N.Y. 1972).......................................................................7

*S&H Riggers & Erectors v. OSHRC*,
  659 F.2d 1273 (5th Cir. 1981) ...........................................................................17

*Sackett v. EPA*,
  132 S. Ct. 1367 (2012) .........................................................................................6

*Schering-Plough Corp. v. FTC*,
  402 F.3d 1056 (11th Cir. 2005) .........................................................................13

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947)..................................................................................... 17, 18

*Sperry & Hutchinson Co. v. FTC*,
  256 F. Supp. 136 (S.D. N.Y. 1966).......................................................................7

*Standard Oil. v. FTC*,
  475 F. Supp. 1261 (N.D. Ind. 1979) .....................................................................7

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (June 16, 2014).................................................................... 10, 18

iv

*T. C. Hurst & Son v. FTC*,
    268 F. 874 (E.D. Va. 1920)...................................................................6

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ............................................................... 6, 8, 10

*Times Mirror v. FTC*,
    No. 78-3422, 1979 U.S. Dist. LEXIS 11738 (C.D. Cal. 1979) ............7

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) .................................................... 10, 18

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ..............................................................................4

*Util. Air Regulatory Group v. EPA*,
    134 S. Ct. 2427 (2014) .......................................................................15

*Walter v. Blue Cross & Blue Shield United*,
    181 F.3d 1198 (11th Cir. 1999) ..........................................................14

*Whitman v. Am. Trucking Ass'ns., Inc.*,
    531 U.S. 457 (2001) ............................................................................14

*XYZ Law Firm v. FTC*,
    525 F. Supp. 1235 (N.D. Ga. 1981) ...................................................12

## <u>Statutes</u>

15 U.S.C. § 45(m)(1)(B) ...........................................................................16

15 U.S.C. §§ 45 (c)-(d) ...............................................................................8

15 U.S.C.§ 57a ..........................................................................................16

28 U.S.C. § 1292(b) ..................................................................................13

28 U.S.C. § 1331 .......................................................................................10

42 U.S.C. § 300jj *et seq.* ...........................................................................15

42 U.S.C. §§ 17901 *et seq.*........................................................................15

42 U.S.C. 110 ..............................................................................................3

5 U.S.C. § 702 .................................................................................... 10, 18

v

## **Other Authorities**

16 C.F.R. § 3.54 ......................................................................................13

## ARGUMENT AND CITATIONS OF AUTHORITY

The essence of civil liberty consists of the right of every individual to claim the protection of the laws, whenever he receives an injury.  One of the first duties of the judicial branch is to provide that protection.  Thus, controlling authorities hold that judicial review of Executive Branch agency action is freely granted absent a clear and convincing demonstration that Congress intended to preclude it "so that agencies, whether in rulemaking, adjudicating, acting or failing to act, do not become stagnant backwaters of caprice and lawlessness."[1]

Appellee, the Federal Trade Commission's (the "FTC"), lengthy campaign against Appellant LabMD, Inc. ("LabMD") is precisely the kind of caprice and lawlessness that justifies judicial review:

---

[1] *See Heckler v. Chaney,* 470 U.S. 821, 848 (1985) (Marshall, J., concurring). Justice Marshall's analysis of the bases for this well-accepted rule is instructive. He began with the premise that there is no "presumption of unreviewability" even for the Executive Branch's exercise of criminal prosecutorial discretion because "the breadth of discretion . . . carries with it the potential for both individual and institutional abuse." *Id.* at 846-47 (citation omitted).  There are constitutional limits on such discretion and so, when "a plaintiff makes a sufficient threshold showing that a prosecutor's discretion has been exercised for impermissible reasons," judicial review is proper.  *Id.* at 846-47 (citations omitted).  If criminal prosecutorial discretion is judicially reviewable for constitutional compliance, then, *a fortiori*, so also is Executive Branch agency action.  Furthermore, the "sine qua non of the [Administrative Procedure Act] was to . . . constrain the exercise of discretionary administrative power – to rationalize and make fairer the exercise of such discretion."  *Id.* at 848 (citation omitted).  Consequently, judicial review of Executive Branch agency ought to be freely available.

- This case is the product of a collusive, opaque relationship between the FTC and an Internet security company called Tiversa that had a direct financial interest in the FTC enforcement action against LabMD and others. (*See* R1, ¶¶ 24-25; R1-6 at 2-3.) After obtaining a LabMD file without the company's knowledge or permission, Tiversa contacted LabMD and solicited business to remediate the alleged security issues. (R1, ¶ 24.) After LabMD determined that no such security issues were present and refused to pay Tiversa, Tiversa began working with the FTC to transfer LabMD's file to a shell company, the Privacy Institute, for the purpose of funneling it to the FTC. (R1, ¶ 25.) *See* LabMD Br. 7. This led one FTC Commissioner to warn that "the Commission should avoid even the appearance of bias or impropriety" associated with Tiversa. (R1-6 at 2.)

- This case has prompted an unprecedented congressional investigation, letters from the Chairman of the House Committee on Oversight and Government Reform questioning the information provided by Tiversa, and an oversight hearing, entitled "The Federal Trade Commission and Its Section 5 Authority: Prosecutor, Judge, and Jury," *available at* http://oversight.house. gov/hearing/federal-trade-commission-section-5-authority-prosecutor-judge-jury-2/ (last visited Aug. 6, 2014).

- This case has led the district court, after hearing on the record from FTC officials regarding the steps taken against LabMD, to describe parts of the FTC's investigation as "a sad comment on your agency" and "almost being unconscionable." (R30 at 77:9-15, 81:7.)

- This case (and the circumstances leading to it) has led the FTC to actively monitor LabMD's CEO's constitutionally protected speech since 2012 but refuse to explain why. (R24; R30 at 23:6-27:25; R33 at 7 n.3.)

- This case has led the Tiversa witness who "generated" the key "evidence" against LabMD to invoke his Fifth Amendment privilege against compelled self-incrimination in the administrative hearing.

In short, something is very wrong here.

The district court erroneously dismissed LabMD's lawsuit seeking

injunctive relief to enjoin the FTC's enforcement proceeding because it has

jurisdiction over all five of LabMD's claims. The district court has jurisdiction over LabMD's claim under the Administrative Procedure Act (the "APA") because the FTC issued a "determinative statement" of agency authority to regulate Protected Health Information ("PHI") data security, specifically the Order Denying Respondent LabMD's Motion to Dismiss (the "FTC Order"). (R1-3.) LabMD's *ultra vires* and claims for First Amendment retaliation, as well as its fair-notice and structural due process claims, are independent of the FTC's administrative enforcement action and also are properly before the district court. Moreover, on the merits, this Court can rule favorably on the jurisdictional and due process claims, which are pure questions of law.

## I.    LABMD'S APA CLAIMS ARE REVIEWABLE NOW.

The district court has jurisdiction to hear LabMD's APA claims because the FTC Order is final agency action with respect to the FTC's authority to over-regulate medical service providers under HIPAA[2] in the field of data security.[3] The FTC Order is final agency action because the FTC says here that the "Commission's ruling represents a definitive interpretation of the application of

---

[2] Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 & 42 U.S.C.) ("HIPAA").

[3] In addition, the FTC's issuance of an administrative complaint is APA "final agency action" on the question of jurisdiction. *See Athlone Industries, Inc. v. CPSC*, 707 F.2d 1485, 1489 n.30 (D.C. Cir. 1983).

3

Section 5 to data security" and "has argued in other litigation that deference under

*Chevron v. NRDC,* 467 U.S. 837 (1984), applies to its construction of Section 5 of

the FTC Act in the order denying LabMD's motion to dismiss." (R13-1 at 23-24.)

These admissions satisfy the APA's finality requirement because determinative

interpretations of a statute, which an agency argues are entitled to *Chevron*

deference, are final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177-78

(1994).[4]

The FTC is still claiming in other federal courts that the FTC Order has the

force of law and is entitled to *Chevron* deference. The FTC did this *again* last

month (on July 14, 2014), arguing that "[t]he FTC's considered interpretation

of . . . [Section 5] in the *LabMD* matter is entitled to substantial deference[.]" FTC

Answer to Petition for Leave to Appeal ("FTC Answer"), *FTC v. Wyndham*

---

[4] The FTC concedes this by defending its actions in multiple courts on the ground
that the FTC Order is entitled to *Chevron* deference. FTC Br. 16-17. This is
because only agency actions with the force of law are eligible for *Chevron*
deference. *United States v. Mead Corp.*, 533 U.S. 218, 226-28 (2001). "[A]gency
actions do not have the force of law unless they 'mark the consummation of the
agency's decisionmaking process' and either determine 'rights or obligations' or
result in discernible 'legal consequences' for regulated parties." *Devon Energy
Corp. v. Kempthorne*, 551 F.3d 1030, 1039 (D.C. Cir. 2008) (quoting *Bennett*, 520
U.S. at 177-78 (1994) (two-part test for APA "final agency action")). Therefore,
any action eligible for *Chevron* deference is necessarily an APA "final agency
action" under *Bennett*. This proposition is illustrated by cases cited in LabMD's
opening brief, which the FTC does not address. *See, e.g.*, *Air Brake Sys. v. Mineta*,
357 F.3d 632, 641-44 (6th Cir. 2004) (explaining relationship between *Chevron*
and APA "final agency action").

*Worldwide Corp.*, No. 14-8091, Doc. 003111678882, at 6 n.3 (3d Cir. July 14, 2014) (citation omitted).[5]  Then, the *FTC* quoted its own FTC Order multiple times as *precedent* establishing that the *FTC's* actions do not violate due process.  *See id.* at 7-8 (citing FTC Order).  If the FTC Order was "legally inconsequential" as the FTC asserts in *this case* (*see* FTC Br. 15), then the FTC could not have claimed *Chevron* deference in the *Wyndham* case.  *See Franklin Fed'l Sav. Bank v. Dir. Office of Thrift Supervision*, 927 F.2d 1332, 1337 (6th Cir. 1991) ("When an agency has acted so definitively that its actions are defended based on *Chevron*, we believe that its action should be treated as final.").

　　To avoid judicial review and bury its admissions, the FTC claims that LabMD contends that any and all of the FTC's interim orders are final agency action.  This claim fails.  LabMD argues – supported by the record and law – that the FTC Order that the FTC calls the "definitive statement of [its] authority" or a "determinative interpretation of the application of Section 5" is final agency action.  The FTC cites nothing holding that an agency's "definitive" or "determinative" statements are something other than final agency action under the APA.

　　The FTC's effort to avoid judicial review rests on inapposite authorities.  To begin with, the FTC relies heavily on *Thunder Basin Coal Co. v. Reich*, 510 U.S.

---

[5] A courtesy copy is being provided to the Court to avoid any difficulty in locating the material.

5

200 (1994), to preclude review.  *See* FTC Br. 11-13.  But in cherry-picking from

that ruling, the FTC omits the pivotal portion of the Court's analysis:

> Whether a statute is intended to preclude initial judicial review is
> determined from the statute's language, structure, and purpose, its
> legislative history . . . and whether the claims can be afforded
> meaningful review.

*Thunder Basin*, 510 U.S. at 207 (citations omitted).  In other words, analyzing

whether review is precluded is a statute-specific task that necessarily depends on

legislative history.  *See id.* at 209-11 & n.15 (in noting that Congress amended the

Mine Act to, among other things, eliminate district court review, the Court found

that "the legislative history and these amendments to be persuasive evidence that

Congress intended to" preclude initial judicial review);[6] *see also Sackett v. EPA*,

132 S. Ct. 1367, 1372-74 (2012) (noting "[t]he APA's presumption of judicial

review" and confirming the Court's case-by-case approach to preclusion analysis).

    Neither Section 5's legislative history, nor its text, shows comparable

congressional intent to preclude review.  Thus, as early as 1920, district courts

began exercising jurisdiction over ongoing FTC enforcement actions.  *See, e.g.*, *T.

C. Hurst & Son v. FTC*, 268 F. 874 (E.D. Va. 1920) (reaching merits and denying

---

[6] *Thunder Basin* is factually distinguishable and thus not controlling in any event.
That case involved "a pre-enforcement challenge" brought by the petitioner
"before receiving . . . [a] letter" from the agency (*see* 510 U.S. at 202, 205),
whereas here, LabMD sought injunctive relief in the district court *after* the full
Commission definitively (and unanimously) ruled on the legal issues for which
LabMD seeks review.

injunction).  And courts have continued to recognize their ability to do so ever since.[7]

Similarly, the FTC's reliance on *FTC v. Standard Oil Co. of California* ("*SoCal*"), 449 U.S. 232 (1980), is misplaced.  The *SoCal* court narrowly held, based on pragmatic considerations in *that case*, that issuance of an FTC administrative complaint is not "final agency action" in large measure because it "is not a definitive ruling or regulation."  449 U.S. at 243; *CSI Av. Servs. v. DOT*, 637 F.3d 408, 412 (D.C. Cir. 2011) (explaining that the issue in *SoCal* "depended on a large body of unresolved facts" and the FTC "[had] not definitively state[d] its legal position").[8]  Here, the FTC itself describes the FTC Order as the "determinative interpretation of the application of Section 5 to data security[.]"

---

[7] *E.g.*, *E.I. du Pont de Nemours and Company v. FTC*, 488 F. Supp. 747, 751 (D. Del. 1980) ("The FTC Act does not deprive [district courts] of jurisdiction to review orders issued or actions taken during the course of an FTC administrative proceeding[.]"); *Coca-Cola v. FTC,* 342 F. Supp. 670, 676-77 (N.D. Ga. 1972) (district court can review constitutional violations); *Boise Cascade Co. v. FTC,* 498 F. Supp. 772, 777 (D. Del. 1980); *Standard Oil. v. FTC*, 475 F. Supp. 1261, 1282 (N.D. Ind. 1979); *Exxon v. FTC*, 411 F. Supp. 1362, 1369-70 (D. Del. 1976); *Times Mirror v. FTC*, No. 78-3422, 1979 U.S. Dist. LEXIS 11738, at *9-10 (C.D. Cal. 1979) (review of agency action where clear jurisdictional defect); *Horizon Co. v. FTC*, No. 76-2031, 1976 U.S. Dist. LEXIS 12222, at *14 & n.19 (D.D.C. 1976); *Sperry & Hutchinson Co. v. FTC*, 256 F. Supp. 136, 144 (S.D. N.Y. 1966); *GMC v. FTC*, No. C77-706, 1977 U.S. Dist. LEXIS 13095, at *13-14 (N.D. Ohio 1978); *Pepsico v. FTC*, 343 F. Supp. 396, 399 (S.D. N.Y. 1972).

[8] The empirical evidence here demonstrating that the Commission's decision to issue a complaint was, in reality, a finding that Section 5 had been violated was not before the Court.  On that basis alone, *SoCal* is distinguishable.  *See infra* at 12-13; (R1, ¶ 94.)

(R13-1 at 24); *CSI*, 637 F.3d at 412-13 (as here, distinguishing *SoCal*:  *SoCal*

stands for the proposition "that courts should . . . [not] inject themselves into fact-

bound agency proceedings that have yet to produce any definitive legal

conclusions.  But this is not such a case.").  Nor do the other cases cited by the

FTC control.  *Doe v. FAA*, 432 F.3d 1259 (11th Cir. 2005), involved a different

statutory scheme, and the plaintiffs sought "an injunction preventing the very

action that would set the administrative-review process in motion" (*see* 432 F.3d at

1263); here, LabMD has exhausted all administrative remedies with respect to its

jurisdictional and due process arguments.  (R1-3.)[9]  *Great Plains Coop v. CFTC*,

205 F.3d 353 (8th Cir. 2000), also interpreted a different statute; thus, under the

*Thunder Basin* analysis urged by the FTC, it too is inapposite.  *Green v. Brantley*,

981 F.2d 514 (11th Cir. 1993), held that a letter was immediately appealable in this

Court under a different statute because it "possesse[d] the requisite finality" (*i.e.*,

the district court lacked jurisdiction because judicial review would have been

available in the appellate court).  *See id.* at 519-20.  Here, LabMD sought judicial

review in this Court under 15 U.S.C. §§ 45 (c)-(d), and in response to this Court

---

[9] LabMD has consistently argued that exhaustion here is an exercise in futility, for the empirical evidence demonstrates that once the Commission issued the Complaint, LabMD's fate was sealed.  (R1, ¶ 94.)  *See infra* at 12-13; *N.B. by D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) ("The exhaustion of the administrative remedies is not required where resort to administrative remedies would be . . . futile[.]").

8

directing LabMD to first seek relief in the district court, LabMD did just that.  (R1-2 at 1-2.)  Finally, the FTC cites *American Airlines, Inc. v. Herman*, 176 F.3d 283 (5th Cir. 1999), for the proposition that the FTC Order is not reviewable because it has no effect that cannot be altered by subsequent FTC action.  FTC Br. 16. However, "[a]n agency action may be final even if the agency's position is 'subject to change' in the future."  *Nat'l Envtl. Dev. Ass'ns Clean Air Project v. EPA*, No. 13-1035, slip op. at 11, 752 F.3d 999, at *14 (D.C. Cir. May 30, 2014) (citation omitted).

The cases cited by the FTC did not confront action by an agency, such as the FTC here, that:  (a) reserved the agency's right to issue criteria binding on regulated entities through informal means; (b) issued an order that the agency declared to be substantive authority; (c) submitted the order to federal district courts as the definitive statement of the agency's position; and (d) could prosecute claims against the regulated community in different types of forums.  The FTC should be held to the standards that it claims to reserve to itself.  If the public is bound to follow all FTC pronouncements of authority, those pronouncements are final agency action under the APA and are reviewable by federal courts when issued.

9

## II.    EVEN WITHOUT FINAL AGENCY ACTION, LABMD'S OTHER CLAIMS ARE REVIEWABLE NOW.

The FTC implicitly concedes that unless this Court concludes that *Thunder Basin* categorically divests it of jurisdiction (which it does not), LabMD's constitutional claims are justiciable now under *National Parks Conservation Association v. Norton*, 324 F.3d 1229, 1240-41 (11th Cir. 2003). *See* FTC Br. 18-19.[10]  In *National Parks*, this Court explained that the APA's "final agency action" requirement is "inapplicable" to constitutional claims. *Nat'l Parks*, 324 F.3d at 1240-41.  Thus, under *National Parks*, LabMD's First Amendment and due process claims are necessarily reviewable now and would be even absent APA "final agency action." *See id.*; *see also Trudeau,* 456 F.3d at 187 (First Amendment claim).[11]  The same holds true for LabMD's nonstatutory *ultra vires*

---

[10] The FTC's administrative complaint is "agency action" waiving the FTC's sovereign immunity. *See SoCal*, 449 U.S. at 238 n. 7; 5 U.S.C. § 702.  Thus, this Court has federal-question jurisdiction over the claims under 28 U.S.C. § 1331. *See Trudeau v. FTC*, 456 F.3d 178, 185-187 (D.C. Cir. 2006).

[11] The recent holding from the United States Supreme Court in *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (June 16, 2014), fully supports this argument as to the retaliation claim.  Specifically, the Supreme Court held that a pre-enforcement administrative claim involving protected free speech was ripe for adjudication, stating that the Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent" or where the administrative action will impose adverse requirements on a citizen. *Id.* at 2342, 2345-46; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 n.13 (1979) ("[T]he prospect of issuance of an administrative cease-and-desist order    . . . or a court-ordered injunction . . .

10

claims.  *See, e.g.*, *Mittleman v. Postal Regulatory Comm'n*, No. 12-1095, 2014 U.S. App. LEXIS 12803, at *19-21 (D.C. Cir. July 8, 2014) (citing *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)); *Am. School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902).

The Fifth Circuit cases cited by the FTC (*see* FTC Br. 10-11) support, rather than refute, this proposition.  *American General Insurance Co. v. FTC*, 496 F.2d 197 (5th Cir. 1974), stands for the proposition that judicial intervention in an ongoing FTC administrative proceeding is proper "if there is a substantial showing that . . . constitutional rights have been violated" or if the FTC has committed a "gross or egregious" jurisdictional error (*id.* at 200); *Coca-Cola Co. v. FTC*, 475 F.2d 299 (5th Cir. 1973), provides that "[t]he most widely recognized exception to the general rule against judicial consideration of interlocutory agency rulings is the class of cases where an agency has exercised authority in excess of its jurisdiction" and that "an 'assertion of constitutional right . . . not transparently frivolous . . . [gives] the district court jurisdiction' to hear an attack on an interlocutory agency order . . . ." (*id.* at 303 (citation omitted));[12] and *Frito-Lay, Inc. v. FTC*, 380 F.2d 8

---

against such prohibited conduct provides substantial additional support for the conclusion that appellees' challenge . . . is justiciable.").

[12] *See also Borden, Inc. v. FTC*, 495 F.2d 785, 786-87 (7th Cir. 1974) ("administrative remedies may be bypassed" if the FTC clearly violates rights or "the issue . . . is a strictly legal one not involving the agency's expertise or any

11

(5th Cir. 1967), which involved a different statute (the Clayton Act), recognized that "in extraordinary cases" plaintiffs are "allowed to . . . seek injunctive relief from the district court" (*id.* at 10). Read together, these cases establish that if the FTC's actions are unconstitutional or *ultra vires*, which they are, then review is proper.

Moreover, the FTC has made statements *in another case* recognizing the importance of the issues raised and the appropriateness for judicial review *in this case*. Specifically, the FTC agreed in *Wyndham* that "the legal issues presented" by the jurisdictional and fair-notice due process arguments "are 'controlling question[s] of law,'" which "are undoubtedly important." FTC Answer, *Wyndham*, No. 14-8091, at 2. Likewise, the FTC agreed that "[t]he Commission, other litigants [*i.e.*, LabMD], and consumers would . . . all benefit from . . . [a] Court's prompt review." *Id.* The FTC even argued that the jurisdictional and fair-notice due process arguments are pure questions of law well suited for interlocutory review if made after the denial of a motion to dismiss. *See id.* at 2, 9.[13] In that case, the Third Circuit agreed that these are controlling questions of law suitable

---

factual determinations" (citation omitted)); *XYZ Law Firm v. FTC*, 525 F. Supp. 1235, 1237 (N.D. Ga. 1981) (explaining *Coca-Cola*).

[13] Ironically, in this case, the FTC frames the FTC Order as "the equivalent of a district court's decision to deny a motion to dismiss." FTC Br. 15 (citation omitted).

12

for interlocutory review.  Order, *Wyndham*, No. 14-8091, Doc. 003111692293 (3d Cir. July 29, 2014);[14] *see also* 28 U.S.C. § 1292(b).

Finally, waiting for the administrative process to run its course before reaching the merits of LabMD's jurisdictional and constitutional claims serves no purpose.  As the district court correctly noted, "the likelihood of a favorable jurisdictional or merits outcome for LabMD is slight[.]"  (R33 at 14 n. 6.)  This is because regardless of whether the Administrative Law Judge finds in favor of LabMD, the Commission will review his factual, legal, credibility, and admissibility determinations *de novo.*  16 C.F.R. § 3.54; *see, e.g., Schering-Plough Corp. v. FTC,* 402 F.3d 1056, 1065, 1070 (11th Cir. 2005).  It is a statistical *certainty* that the Commission – regardless of what the ALJ holds – will find LabMD to have violated Section 5.  (R1, ¶ 94.)  The FTC does not dispute this and cannot point to a single example of a respondent in LabMD's position prevailing before the Commission.  *Cf.* LabMD Br. 20-21, 34-35.

Therefore, there is jurisdiction for all of LabMD's constitutional and jurisdictional claims even without final agency action.

---

[14] A courtesy copy is being provided to the Court to avoid any difficulty in locating the material.

### III.    ON THE MERITS, THIS COURT CAN RULE FOR LabMD ON ITS JURISDICTIONAL AND DUE PROCESS CLAIMS.

As discussed in LabMD's opening brief, this Court should reach the merits of the dispositive legal issues in connection with LabMD's *ultra vires* and due process claims.  LabMD Br. at 24-25; *see Walter v. Blue Cross & Blue Shield United*, 181 F.3d 1198, 1202 (11th Cir. 1999); *see also, e.g.*, *Athlone,* 707 F.2d at 1489 n. 30 (addressing jurisdictional issue without remand).  The FTC did not dispute this assertion in its brief.  *See generally* FTC Br.  Indeed, LabMD's *ultra vires* and due process claims will never be more ripe for review, and all have been fully briefed.  (*E.g.*, R1-12, -13, -15; R2-1; R13-1; R17/19; R17-3/R19-3.)  As set forth below, on the merits, this Court should rule in favor of LabMD on both claims.

    A.    The FTC's Actions Are *Ultra Vires* Because It Lacks Jurisdiction Over LabMD's Protected Health Information Data Security.

As LabMD argued below and before the agency, the FTC does not have jurisdiction to regulate LabMD's PHI data security.  (R1-12 at 1-3, 9-22; R1-13 at 2-11; R2-1 at 13-19; R17 at 24-31.)  The district court has stated that "there is significant merit" to this argument.  (R1-9 at 14.)  Even the FTC admits "that the FTC Act does not address data security."  FTC Br. 23.

Congress does not hide regulatory elephants in statutory mouseholes. *Whitman v. Am. Trucking Ass'ns., Inc*., 531 U.S. 457, 468 (2001); *see Brown &*

14

*Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000). Thus, the Court "expect[s] Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'" *Util. Air Regulatory Group v. EPA* ("*UAGA*"), 134 S. Ct. 2427, 2444 (2014) (citing *Brown & Williamson*, 529 U.S. at 160); *Loving v. IRS*, 742 F.3d 1013, 1021-22 (D.C. Cir. 2014) (explaining that "courts should not lightly presume congressional intent to implicitly delegate decisions of major economic or political significance to agencies" and rejecting agency's *ultra vires* attempt to drastically, and unilaterally, expand its authority). Here, even the FTC admits that there is no clear authorization for its power-grab. *See* FTC Br. 4, 23; *see also La. Pub. Serv. Com. v. FCC,* 476 U.S. 355, 374 (1986).

Moreover, even if Section 5 did give the FTC some "unfairness" data-security authority, the FTC still lacks jurisdiction over PHI data-security. HIPAA and the Health Information Technology for Economic and Clinical Health Act of 2009, 42 U.S.C. § 300jj *et seq.*, §§ 17901 *et seq.* ("HITECH"), which require the Department of Health and Human Services ("HHS") to promulgate regulations setting substantive PHI data-security standards, manifest clear congressional intent to displace and repeal Section 5 insofar as it would otherwise apply to HIPAA-regulated healthcare providers. *See Credit Suisse v. Billing*, 551 U.S. 264, 275-76 (2007); *FTC v. A. P. W. Paper Co*., 328 U.S. 193, 198-204 (1946).

15

Instead of addressing the above, the FTC focuses on "unfair competition" legislative history from 1914, case law upholding the FTC's Section 5 "unfairness" authority over specific conduct involving fraud and unilateral breach of contract (which are not at issue here), and dicta from case law predating the 1994 amendment of Section 5 – all of which previously was addressed by LabMD. *Compare* FTC Br. 24-25, *with* (*e.g.*, R1-12 at 18; R1-13 at 4-5.)  Similarly, the FTC's attempt to selectively quote the preamble to HHS's HIPAA Security Rule – an Executive-branch agency's post-enactment statements – are not relevant to determining Congressional intent.  *Compare* FTC Br. 25-26, *with* LabMD Br. 27 n.30.  For all of these reasons, the FTC's actions are *ultra vires*.

B.    The FTC Violates Due Process.

The FTC admits that "the FTC Act does not address data security."  *See* FTC Br. 23.  The FTC admits that it has not explained through regulations what PHI data-security practices it believes Section 5 to forbid or require,[15] even though it has authority to issue regulations defining "unfair" trade practices, 15 U.S.C.§ 57a. (R1-3 at 15; R17-4/19-4 at 19-20, ¶¶ 1-3.)  The FTC does not seriously dispute that it lacks ascertainable data-security standards and holds companies to an after-the-fact "reasonableness" standard set by litigation experts, and even refuses to issue

_____

[15] The FTC is statutorily barred from using consent orders, which only bind the parties thereto, to set general standards.  15 U.S.C. § 45(m)(1)(B); *Good v. Altria Group, Inc*., 501 F.3d 29, 53 (1st Cir. 2007).

16

advisory opinions.  (R1-10 at 9:13-10:16; R1-15 at 52:10-11, 53:2-10, 54:3-10, 69:22-70:5; R17-4/19-4 at 19-20, ¶¶ 1-3.)  Yet, the FTC has taken the position that Section 5's text, standing alone, provides fair notice of prohibited or required PHI data-security practices.  (R1-3 at 16.)

This is unconstitutional, as LabMD argued before the agency and below.  (*See* R1-12 at 22-28; R1-13 at 11-18; R2 at 19-22; R17 at 31-39.)  Indeed, the cases cited by LabMD – which the FTC does not address – are controlling and so the FTC's standard-less *ex post* enforcement regime violates due process.  *See, e.g.*, *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926); *Georgia Pac. Corp. v. OSHRC*, 25 F.3d 999, 1005 (11th Cir. 1994).  This holds particularly true as applied to LabMD, given the FTC's refusal to link its "standards" to medical-industry data-security standards set by HIPAA, HITECH, and/or HHS regulations.  *Compare* R1-10 at 9:13-10:16; R17-4/19-4 at 21-24, ¶¶ 5-8; *and* R1-15 at 52:2-10, *with S&H Riggers & Erectors v. OSHRC*, 659 F.2d 1273, 1280-85 (5th Cir. 1981) ("reasonableness" standard divorced from objective industry-specific standards violates due process); *Fla. Mach. & Foundry, Inc. v. OSHRC,* 693 F.2d 119, 120-21 (11th Cir. 1982) (industry-specific standards control).  Tellingly, the FTC does not cite a single fair-notice due process case in its brief.  *See* FTC Br. 22-23.[16]

---

[16] *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), cited by the FTC, involved an agency that "had not previously been confronted with the problem," resulting in

17

**IV.    LABMD STATES A CLAIM THAT THE FTC'S RETALIATION VIOLATES THE
FIRST AMENDMENT.**

LabMD previously provided ample evidence in support of its claim that the
FTC retaliated against it for constitutionally protected speech.  *See* LabMD Br. 15-
18.  For example, the record includes facts developed at the hearing on LabMD's
motion for preliminary injunction, including that FTC employees visited the
website of LabMD's CEO 75 times the day after he posted a blog that criticized the
FTC but otherwise contained no information relevant to the FTC's investigation.
(R30 at 23:14-27:15.)  In fact, LabMD has pled all of the elements of a First
Amendment retaliation claim.  (*See* R1, ¶¶ 35-39, 99-101, 144-50.)  *See, e.g., Fritz
v. Ch. Twp. of Comstock*, 592 F.3d 718, 729 (6th Cir. 2010).

Although the FTC suggests otherwise, LabMD is not arguing that the FTC's
investigation is retaliation.  *See* FTC Br. 20-21.[17]  Rather, LabMD is alleging,
among other things, that FTC staff's decision to pursue an enforcement action
three days after Mr. Daugherty announced his intention to write a book critical of

---

the Court ruling that "[t]he function of filling in . . . [statutory] interstices . . .
should be performed, as much as possible, through . . . quasi-legislative
promulgation of rules to be applied in the future."  *Id.* at 202-03.  In fact, *Chenery*
is not a fair-notice case; unlike here, the SEC did not seek liability for past
conduct.  *See id.* at 197-98, 203-04.

[17] The FTC's argument that LabMD did not allege a stand-alone retaliation claim
because LabMD did not seek damages from the FTC is disingenuous.  FTC Br. 19.
LabMD did not seek damages because damages are barred as a matter of law under
the APA.  *See* 5 U.S.C. § 702; *see Trudeau*, 456 F.3d at 185-86; *Susan B. Anthony
List*, 134 S. Ct. at 2338-39 (pre-enforcement review available despite no damages).

18

their actions constitutes retaliation.  (R1, ¶¶ 38-39.)  Notably, the FTC does not deny its pattern of monitoring Mr. Daugherty's protected First Amendment conduct and refuses to explain why it is doing so.  (R24; R33 at 7 n.3.)  Thus, the district court reversibly erred in dismissing this claim.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's order granting the FTC's motion to dismiss and resolve the pure questions of constitutional law and statutory interpretation presented by this appeal.

Respectfully submitted, this 11th day of August, 2014.

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555
rraider@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
bmeyer@kilpatricktownsend.com

/s/ Ronald L. Raider
Ronald L. Raider
Georgia Bar No. 592192
Burleigh L. Singleton
Georgia Bar No. 649084
William D. Meyer
Georgia Bar No. 950008

*Counsel for Appellant LabMD, Inc.*

CAUSE OF ACTION
1919 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile:   (202) 330-5842
prashant.khetan@causeofaction.org
michael.pepson@causeofaction.org

/s/ Prashant K. Khetan
Prashant K. Khetan
D.C. Bar No. 477636
(renewal admission to be filed)
Michael D. Pepson
Admitted only in Maryland;
practice limited to federal matters

*Counsel for Appellant LabMD, Inc.*

19

DINSMORE & SHOHL, L.L.P.    /s/ Reed D. Rubinstein
801 Pennsylvania Ave., NW, Suite 610    Reed D. Rubinstein
Washington, D.C. 20004    D.C. Bar No. 400153
Telephone: (202) 372-9120
Facsimile:   (202) 372-9141    Senior Vice President for Litigation and
reed.rubinstein@dinsmore.com    Counsel to Cause of Action

*Counsel for Appellant LabMD, Inc.*

20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7), I hereby certify that the entirety of this brief contains 6,601 words.  I have relied on a word-processing system for the word count.  I further certify that, other than certain letters in the names of law firms in the signature blocks, this brief has been prepared in a proportionally spaced typeface utilizing 14-point Times New Roman font.

This 11th day of August, 2014.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

/s/ Ronald L. Raider
Ronald L. Raider

*Counsel for Appellant LabMD, Inc.*

21

US2008 5873102 2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2014, the foregoing

APPELLANT'S REPLY BRIEF was filed in the Eleventh Circuit Court of

Appeals using the CM/ECF system.  I further certify that electronic copies of the

foregoing APPELLANT'S REPLY BRIEF were served via the CM/ECF system,

and paper copies were served via U.S. Mail to:

        Lauren E. Fascett, Esq.
        Perham Gorji, Esq.
        Trial Attorneys
        U.S. Department of Justice
        Civil Division
        Consumer Protection Branch
        450 5th Street NW
        Washington, DC 20001
        lauren.fascett@usdoj.gov
        perham.gorji@usdoj.gov


        Mark B. Stern, Esq.
        Abby C. Wright, Esq.
        U.S. Department Of Justice
        Civil Division
        950 Pennsylvania Ave., N.W.
        Room 7252
        Washington, D.C. 20530

This 11th day of August, 2014.

                    /s/ Ronald L. Raider
                    *Counsel for Appellant LabMD, Inc.*

US2008 5873102 2

EXHIBIT 1

Case No. 14-8091

--------------------

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

--------------------

## FEDERAL TRADE COMMISSION,
### Plaintiff-Appellee,

v.

## WYNDHAM WORLDWIDE CORPORATION, et al.,
### Defendants-Appellants.

--------------------

**Appeal from United States District Court for the District of New Jersey
Case 2:13-cv-01887-ES-JAD, Hon. Esther Salas, D.J.**

--------------------

## PLAINTIFF-APPELLEE FEDERAL TRADE COMMISSION'S
## ANSWER TO DEFENDANT-PETITIONER'S
## PETITION FOR LEAVE TO APPEAL

Pursuant to Fed. R. App. P. 5(b)(2), the Federal Trade Commission answers

the Petition for Leave to Appeal filed by Wyndham Hotels & Resorts, LLC

("Wyndham") on July 3, 2014.  Wyndham seeks the Court's permission to take an

immediate appeal from the district court's April 7, 2014 interlocutory order (DDE

#182) denying Wyndham's motion to dismiss.  *See also* Opinion (DDE #181)

("Op.").  On June 23, 2014, the district court granted Wyndham's motion to certify

the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See*

Memorandum Opinion and Order (DDE #203) ("Certif. Order").

The Commission does not oppose Wyndham's petition, although it disagrees

that the petition satisfies all of the prerequisites for an interlocutory appeal set forth

in 28 U.S.C. § 1292(b).  In particular, the Commission believes that there is no

"substantial ground for difference of opinion" on the merits of the underlying

district court order, which comports with the plain text of the FTC Act and follows

longstanding judicial precedent.  Moreover, interlocutory review is unlikely to

"materially advance the ultimate termination of th[is] litigation."  On the other

hand, Wyndham is not seeking a stay of the district court proceedings pending any

interlocutory appeal.  In addition, the legal issues presented are "controlling

question[s] of law," and they are undoubtedly important.  The Commission, other

litigants, and consumers would thus all benefit from this Court's prompt review.

<u>Background</u>

On August 9, 2012, the FTC filed a civil law enforcement complaint against

Wyndham under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), alleging

violations of Section 5(a) of the Act, which prohibits "[1] unfair or [2] deceptive

acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(2). The complaint

alleged that Wyndham engaged in both "unfair" and "deceptive" practices, and set

forth a separate cause of action for each legal theory.  Only the "unfairness" cause

of action is at issue in this proposed interlocutory appeal.[1]

As to that cause of action, the complaint alleged that Wyndham

implemented unreasonable data security measures on its corporate computer

---

[1] The Complaint also included charges against other defendants – *i.e.*, Wyndham's
parent and affiliate corporations.

2

networks and thus "unreasonably and unnecessarily exposed consumers' personal

data to unauthorized access and theft."  First Amd. Complt. (DDE #28), ¶ 24.  In

particular, Wyndham's failure to take proper security measures enabled hackers to

obtain payment card account numbers and security codes and to make fraudulent

charges on consumers' accounts.  *Id.*, ¶¶ 25-40.  And Wyndham's inadequate data-

security practices thus caused "substantial injury to consumers" that consumers

could not avoid and that had no countervailing benefits.  *Id.*, ¶ 48 (citing 15 U.S.C.

§ 45(n)).

Wyndham filed a motion to dismiss, which the district court denied.  First,

the court rejected Wyndham's challenge to the Commission's statutory power to

bring this enforcement action, finding no legal support for Wyndham's demand to

"carve out a data-security exception to the FTC's unfairness authority."  Op. at 10-

15.  The district court also rejected Wyndham's contention that the FTC cannot file

an unfairness claim in federal district court unless it first issues formal rules and

regulations.  *Id.* at 18-25.[2]

Wyndham asked the district court to certify that interlocutory order for

immediate appeal to this Court, pursuant to 28 U.S.C. § 1292(b).  *See* DDE #188-1

---

[2] The district court also concluded that both the "unfairness" and "deception"
causes of action in the complaint satisfied Fed. R. Civ. P. 8(a) pleading
requirements.  *Id.* at 26-33, 35-42.  The court subsequently denied the other
defendants' motion to dismiss in a separate opinion (DDE #201) issued on June 23,
2014.  Those rulings are not at issue in this petition.

(filed April 17, 2014).  The district court granted the motion and certified the

following questions for interlocutory review:

> (1)    Whether the [FTC] can bring an unfairness claim involving data
> security under Section 5 of the [FTC] Act, 15 U.S.C. § 45(a); and

> (2)    Whether the [FTC] must formally promulgate regulations before
> bringing its unfairness claim under Section 5 of the [FTC] Act,
> 15 U.S.C. § 45(a).

Certif. Order at 9-10.

<u>Analysis</u>

The two issues presented are "controlling questions of law" for purposes of

Section 1292(b) in the sense that, if they were resolved against the Commission,

they would dispose of the "unfairness" counts in the complaint.  Nonetheless, the

Commission takes issue with Wyndham's claim that there is any "substantial

ground for difference of opinion" on those questions, and it is also at best unclear

whether interlocutory review would "materially advance the ultimate termination

of the litigation."  Nonetheless, the Commission agrees that the issues presented

are important and would welcome this Court's prompt disposition of them.

1.  The district court's decision was correct for the reasons that the court

explained in detail.

*First*, the Commission plainly has statutory authority to proceed under

Section 5's "unfairness" prong against companies that harm consumers by

exposing them to unreasonably lax data-security practices, as Wyndham allegedly

did.  It is irrelevant that, when enacting the relevant statutory provisions in the

previous century, Congress did not specifically anticipate such practices and direct

the Commission to take action against them.  Congress intentionally enacted the

broadly worded prohibition on all "unfair" commercial practices because it

understood that it could not possibly specify all such practices in the statutory text

and continuously update the list with every change in technology and commerce.

*See* Op. at 15 (citing, *inter alia*, *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233,

240 (1972)); *see also* H.R. Rep. No. 63-1142, at 19 (1914) (Conf. Rep.) ("It is

impossible to frame definitions which embrace all unfair practices.").

Instead, Congress left the identification of unfair practices to case-by-case

adjudication, and it constrained the FTC's discretion with a mandatory cost-benefit

analysis.  In particular, Congress provided that the Commission may not proceed

against an "act or practice" as "unfair" under Section 5 unless it "causes or is likely

to cause substantial injury to consumers which is not reasonably avoidable by

consumers themselves and not outweighed by countervailing benefits to consumers

or to competition."  15 U.S.C. § 45(n).  Wyndham's unreasonable data-security

activities, as alleged in the complaint, fall squarely within this definition.  At

bottom, Wyndham's position is an ill-conceived "request to carve out a data-

security exception" to Section 5, and the district court followed "binding and

persuasive precedent" in rejecting that request.  Op. at 7, 15.

5

In its petition, Wyndham renews various arguments it has made on this statutory authority issue.  For example, it incorrectly argues (Pet. at 10) that certain other statutory provisions would be "superfluous" unless Section 5 is subject to its proposed data-security carve-out.  Similarly, Wyndham wrongly asserts (Pet. at 10 n.4) that "the FTC has previously *denied* that it has generalized data-security authority under Section 5."  Those arguments are all without merit for the reasons explained in the district court's opinion (Op. at 10-14) and in the Commission's briefs below.[3]

*Second*, there is also no "substantial ground for difference of opinion" as to whether the FTC may, consistent with "basic principles of fair notice and due process," enforce statutory prohibitions without first promulgating "rules, regulations, or other guidelines explaining" precisely which practices are unreasonable as technology and data-security threats evolve.  Op. at 15-16 (quoting Wyndham Br. in Support of Mo. to Dismiss (DDE #91-1, filed April 26, 2013)).

---

[3] In a detailed administrative order in a separate case, the Commission itself, sitting as an adjudicative tribunal, has also addressed the scope of its Section 5 authority and has concluded, like the district court here, that the FTC Act authorizes it to address unreasonable and harmful data-security practices.  *See LabMD, Inc.*, Order Denying Mo. to Dismiss, Dkt. No. 9357 (Jan. 16, 2014) ("*LabMD Order*"), http://www.ftc.gov/sites/default/files/documents/cases/140117labmdorder.pdf.  The FTC's considered interpretation of its own organic statute in the *LabMD* matter is entitled to substantial deference and would resolve any lingering statutory ambiguities.  *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013).

Where, as here, a statute gives an agency an option to proceed through either prescriptive regulation or individual adjudication, "the choice is one that lies in the informed discretion of the administrative agency." *Id.* at 18 (quoting *PBW Stock Exch., Inc. v. SEC*, 485 F.2d 718, 732 (3d Cir. 1973), and citing *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947), and other cases). Like the district court here, courts have repeatedly applied that principle to the FTC and found that various commercial practices were "unfair" under the Section 45(n) standard, even though no regulation specifically addressed them. *See, e.g., FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010); *FTC v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009). Similarly, this Court has made clear that objective administrative standards, such as the "reasonably prudent person test" applied in OSHA cases, comport with constitutional requirements of fair notice. *See* Op. at 24 (citing *Voegele Co. v. Occupational Safety & Health Review Comm'n*, 625 F.2d 1075, 1077-78 (3d Cir. 1980)). That body of precedent is particularly compelling here, given the considerable industry guidance that is available in "the FTC's many public complaints and consent agreements," in "its public statements and business guidance brochure," and in a wealth of private-sector materials reflecting "'industry standard practices' and 'commercially reasonable efforts.'" Op. at 24.

Wyndham's fair-notice argument is even more "untenable when viewed against the backdrop of the common law of negligence. Every day, courts and

juries subject companies to tort liability for violating uncodified standards of care,"
and when they "find that corporate defendants have violated an unwritten rule of
conduct, they can normally impose compensatory and even punitive damages."
*LabMD Order* at 17. Against that backdrop, "[t]here is simply no basis to
conclude that the FTC's application of the Section [45](n) cost-benefit analysis
violates due process," particularly given that the complaint is not seeking the type
of damages a jury might award, but only equitable relief (including any monetary
relief within the court's equitable jurisdiction). *Id.* As the district court observed,
Wyndham has tellingly offered no plausible response to that point. *See* Op. at 22.

2. It also appears unlikely that, as separately required by section 1292(b),
interlocutory review will "materially advance the ultimate termination of the
litigation" before the district court. Wyndham acknowledges that a trial will still
be needed on the surviving "deception" cause of action even if it were to prevail on
appeal and thereby obtain dismissal of the "unfairness" cause of action. Certif.
Order at 7; Wyndham Mo. to Certify (DDE #188-1) at 10. Both causes of action
turn largely on questions about whether, as Wyndham told consumers, the
company's data-security practices were commercially reasonable. *See* Op. at 29-
30 (unfairness); *id.* at 37-38 (deception). Dismissal of the "unfairness" claim
would not remove the need to address that same issue for purposes of the
"deception" claim. Nor would dismissal of the "unfairness" cause of action

8

eliminate any parties from the case.  The district court rejected the Wyndham's

corporate affiliates' motion to dismiss, finding that the complaint adequately

alleged that they operated as a "common enterprise" with Wyndham.  *See* Opinion

(DDE #201) (issued June 23, 2014).  If the Commission proves those allegations,

these entities would be liable to the same extent as Wyndham on the surviving

"deception" count.

3.  All this said, a prompt decision by this Court affirming the district court

would advance the public interest by removing the uncertainty that Wyndham is

attempting to generate regarding the Commission's statutory authority to protect

consumers from unreasonable and harmful data-security lapses.  For that reason,

and because Wyndham does not seek a stay of the district court proceedings

pending any interlocutory appeal, the Commission does not oppose the petition.

Respectfully submitted,

 /s/  David L. Sieradzki
JONATHAN E. NUECHTERLEIN
General Counsel

Of counsel:

KRISTIN KRAUSE COHEN
KEVIN H. MORIARTY
JAMES A. TRILLING
Bureau of Consumer Protection
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW
Washington, D.C. 20580

JOEL MARCUS
Assistant General Counsel

DAVID L. SIERADZKI
Attorney, Office of General Counsel

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW
Washington, D.C. 20580
(202) 326-2092

July 14, 2014

<u>Certificate of Service</u>

I certify that, on July 14, 2014, I filed the foregoing document via the

Court's Electronic Case Filing (ECF) system, and that the document was served on

all parties' counsel of record through the ECF system.

/s/ David L. Sieradzki_____

EXHIBIT 2

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

July 15, 2014
BCO-106

No. <u>14-8091</u>

FEDERAL TRADE COMMISSION

v.

WYNDHAM WORLDWIDE CORPORATION, a Delaware Corporation;
WYNDHAM HOTEL GROUP LLC, a Delaware limited liability company;
WYNDHAM HOTELS AND RESORTS, LLC, a Delaware limited liability company;
WYNDHAM HOTEL MANAGEMENT INCORPORATED, a Delaware Corporation

Wyndham Hotels and Resorts, LLC.,

Petitioner

(D.N.J. No. 2-13-cv-01887)

Present: AMBRO, CHAGARES and VANASKIE, <u>Circuit Judges</u>

1.    Petition by Wyndham Hotels and Resorts, LLC for Leave to Appeal
      Pursuant to Fed. R. Civ. P. 23(f);

2.    Brief by Amicus Curiae Chamber of Commerce of the United States of
      America in Support of Petitioner;

3.    Response by Respondent Federal Trade Commission to the Petition; and

4.    Motion by Petitioner Wyndham Hotels and Resorts, LLC for Leave to File
      a Reply to Respondent's Response with Proposed Reply Attached.

Respectfully,
Clerk/cjg

_____ORDER_____
The foregoing petition and motion are hereby granted.

By the Court,


s/ Michael A. Chagares
Circuit Judge

Dated: July 29, 2014
CJG/cc:     Joel R. Marcus, Esq.
              David L. Sieradski, Esq.
              Kenneth W. Allen, Esq.
              Eugene F. Assaf, Esq.
              Christopher Landau, Esq.
              Sheldon Gilbert, Esq.
              Steven P. Lehotsky, Esq.
              Kate C. Todd, Esq.
              Banks Brown, Esq.
              Karen R. Harned, Esq.



**A True Copy:**

Marcia M. Waldron, Clerk